UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DR. HANSEL M. DeBARTOLO | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 07 C 7179 |
| | ) | |
| v. | ) | JUDGE ZAGEL |
| | ) | |
| SUBURBAN TEAMSTERS OF NORTHERN ILLINOIS WELFARE FUND, | ) ) | MAGISTRATE JUDGE KEYS |
| | ) | |
| Defendant. | ) | |

**RULE 56.1 STATEMENT OF UNCONTESTED FACTS OF DEFENDANT SUBURBAN TEAMSTERS OF NORTHERN ILLINOIS WELFARE FUND**

Pursuant Local Rule 56.1(a), Defendants Suburban Teamsters of Northern Illinois, et al., (hereinafter "Defendant") submit the following statement of material facts as to which there is no genuine issue:

1. The Suburban Teamsters of Northern Illinois Welfare Fund (hereinafter, "Welfare Fund") is a multi-employer employee benefit trust fund maintained under the Taft-Hartley Act. (See Affidavit of Jose Colin, attached hereto as Exhibit 1 (hereinafter, "Colin Aff. Par."), paragraph 2.)

2. From 1993 through June 2008, the Welfare Fund was administered from an office located at 1275 W. Roosevelt Road, Unit 121, West Chicago, Illinois 60185. (Colin Aff. par. 2.)

3. The Welfare Fund is now administered from an office located at 1171 Commerce Drive, Unit 1, West Chicago, Illinois 60185-2680. (Colin Aff. par. 2.)

4. The Administrator of the Welfare Fund is the Board of Trustees, which consists of seven natural persons. (Colin Aff. par. 3.)

5. Jose Colin (hereinafter, "Colin") is the Fund Manager of the Welfare Fund. (Colin Aff. par. 1.)

6. In the ordinary course of its business, the Welfare Fund maintains records regarding, among other things, participant work histories, employer contribution histories and records of claims made and claims paid on behalf of participants. (Colin Aff. par. 4.)

7. In his capacity as Fund Manager, Colin oversees the maintenance of all such records. (Colin Aff. par. 4.)

8. For a period of time ending in 1999, members of the Textile Processors, Service Trades, Health Care Professional and Technical Employees International Union Local No. 142 also participated in the Welfare Fund. This local union was not affiliated with the International Brotherhood of Teamsters. (Colin Aff. par. 7.)

9. The records of the Welfare Fund indicate that Mr. Null was an employee of Valley Linen/Aurora Laundry in 1997 and was a member of Textile Processors, Service Trades, Health Care Professional and Technical Employees International Union Local No. 142. (Colin Aff. par. 9.)

10. The records of the Welfare Fund indicate that Dr. Hansel M. DeBartolo provided Mr. Null certain medical services in 1997. (Colin Aff. par. 10.)

11. Mr. Null's claims for treatment by Dr. DeBartolo were processed in accordance with the Fund's Plan of Benefits in effect as of January 1, 1996. (Colin Aff. par. 11.)

12. In 1997, the Welfare Fund utilized a third party administrator to process claims. That company was W.J. Haynes & Co., located at 7045 N. Western Avenue, Chicago, IL 60645. (Colin Aff. par. 12.)

13. Mr. Null received medical services from Plaintiff on: March 7, 1997, and was charged $1,638.00 (see Exhibit A); March 10, 1997, and was charged $558.00 (see Exhibit B); March 18, 1997, and was charged $6,000.00 (see Exhibit C); March 21, 1997, and was charged

Exhibit D); March 24, 1997, and was charged $558.00 (see Exhibit E); April 4, 1997, and was charged $558.00 (see Exhibit F); April 15, 1997, and was charged $9,000.00 (see Exhibit G); and April 21, 1997, and was charged $558.00 (see Exhibit H). (Colin Aff. par. 13.)

14.     The total charged by Plaintiff to the Welfare Fund was $19,428.00. (Colin Aff. par. 13.)

15.     The Welfare Fund paid Plaintiff: $1,310.40 for the services rendered to Mr. Null on March 7, 1997 (see Exhibit I); $446.40 for the services rendered to Mr. Null on March 10, 1997 (see Exhibit J); $6,000.00 for the services rendered to Mr. Null on March 18, 1997 (see Exhibit K); $446.40 for the services rendered to Mr. Null on March 21, 1997 (see Exhibit L); $446.40 for the services rendered to Mr. Null on March 24, 1997 (see Exhibit M); $446.40 for the services rendered to Mr. Null on April 4, 1997 (see Exhibit N); $1,486.61 for the services rendered to Mr. Null on April 15, 1997 (see Exhibit O); and $446.40 for the services rendered to Mr. Null on April 21, 1997 (see Exhibit P). (Colin Aff. par. 14.)

16.     The total paid by the Welfare Fund to Plaintiff was $11,029.01. (Colin Aff. par. 14.)

17.     The difference between the claims paid by the Welfare Fund and the amount charged by Plaintiff for the services rendered to Mr. Null from March through April 1997 is $8,398.99 ($19,428.00 - $11,029.01 = $8,398.99). (Colin Aff. par. 15.)

18.     On May 28, 1997, the Welfare Fund sent a letter to Plaintiff advising him that it considered the $9,000 charge incurred on April 15, 1997, "considerably" above the "usual and customary" amount and requested additional information from Plaintiff in order to evaluate the claim, before it made its decision regarding payment. (Colin Aff. par. 16.)

19.     The Fund reviewed additional information provided by Plaintiff and issued its payment

to Plaintiff in the amount of $1,486.61 on July 10, 1997. (Colin Aff. par. 16.)

20. On March 25, 1998, Plaintiff sent a letter to the Welfare Fund, protesting the amount allowed for the claim incurred on April 15, 1997. Plaintiff asserted that, "More should have been allowed." (Colin Aff. par. 17.)

21. Plaintiff did not request a review of any claim other than the April 15, 1997, claim. (Colin Aff. par. 18.)

22. The Plan of Benefits in effect at the time that claims were paid by the Welfare Fund to Plaintiff (between March and July 1997) was dated January 1, 1996. (Colin Aff. par. 19.)

23. The Plan of Benefits (as described in the Summary Plan Description ("SPD")) contains a "Claim Review Procedure," which mandates that, in order to obtain a review of a claim after a denial of benefits, the person must request a review in writing within 60 days of the date the denial was mailed. (Colin Aff. par. 20.)

24. The Claim Review Procedure provides that a person may not file a legal action against the Plan to recover benefits until all of the proper claim review procedures have been followed. (Colin Aff. par. 20.)

25. The Plan of Benefits also provides that decisions of the Trustees in administering the Trust shall be binding unless found to be arbitrary and capricious. (Colin Aff. par. 21.)

26. After December 1999, W.J. Haynes & Co., no longer provided claim processing services or any other services to the Welfare Fund. (Colin Aff. par. 22.)

27. From December 1999 through June 2007, the Welfare Fund used another third party administrator, OBA Midwest, to process medical claims. (Colin Aff. par. 22.)

28. The Welfare Fund has no record regarding any notice from Mr. Null or the Plaintiff

4

to the Welfare Fund purporting to appeal any of the claim denials within the time limits established by the Plan of Benefits. (Colin Aff. par. 23.)

29. The Welfare Fund has no record regarding any correspondence from the Welfare Fund to Mr. Null or to the Plaintiff, addressing any purported appeal of any of the claim denials within the time limits established by the Plan of Benefits. (Colin Aff. par. 24.)

30. Mr. Null ceased to be a Welfare Fund participant on or about September 1999. (Colin Aff. par. 25.)

31. The Welfare Fund has no record regarding any documents directed from Mr. Null or the Plaintiff to the Welfare Fund, purporting to request copies of the Plan or the SPD, during the period of time that Mr. Null was a participant in the Plan. (Colin Aff. par. 26.)

32. The Restated Agreement and Declaration of Trust creating the Welfare Fund that was in effect at the time that claims were paid by the Welfare Fund to Dr. DeBartolo (between March and July 1997) was effective as of October 12, 1977, and continues in effect today. (Colin Aff. par. 27.)

33. The Welfare Fund's Restated Agreement and Declaration of Trust provides, in Section 5.02, that decisions of the Trustees in administering the Trust shall be binding unless found to be arbitrary and capricious. (Colin Aff. par. 28.)

34. In 1997, Mr. Null was 38 years old. (Colin Aff. par. 9.)

35. For medical services rendered on March 7, 1997, March 10, 1997, March 18, 1997, March 21, 1997, and March 24, 1997, the Welfare Fund's payment to Plaintiff was made on April 22, 1997; for medical services rendered on April 4, 1997, the Welfare Fund's payment was made on May 6, 1997; for medical services rendered on April 15, 1997, the Welfare Fund's payment was made on July 10, 1997; and for medical services rendered on April 21, 1997, the Welfare Fund's

payment was made on May 22, 1997. (Colin Aff. par. 29.)

>Respectfully submitted,
>
>Defendant SUBURBAN TEAMSTERS OF NORTHERN ILLINOIS WELFARE FUND,
>
>/s/Barry G. Collins; IL ARDC#: 3126979
>
>/s/ Librado Arreola; IL ARDC#: 6203323

Barry Collins (bgc@ulaw.com)
Librado Arreola (la@ulaw.com)
ASHER, GITTLER, GREENFIELD & D'ALBA, LTD.
200 West Jackson Boulevard, Suite 1900
Chicago, IL 60606
(312) 263-1500 – phone
(312) 263-1520 – facsimile