UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DR. HANSEL M. DeBARTOLO | ) |
| | ) |
| Plaintiff, | ) Case No. 07 C 7179 |
| | ) |
| v. | ) JUDGE ZAGEL |
| | ) |
| SUBURBAN TEAMSTERS OF NORTHERN ILLINOIS WELFARE FUND, | ) MAGISTRATE JUDGE KEYS |
| | ) |
| Defendant. | ) |

### AFFIDAVIT OF JOSE COLIN

Jose Colin, being first duly sworn on oath, deposes and states as follows:

1. I am the Fund Manager of the Suburban Teamsters of Northern Illinois Welfare Fund (hereinafter, "Welfare Fund"). I have been employed in this capacity since April 2003.

2. The Welfare Fund is a multi-employer employee benefit trust fund maintained under the Taft-Hartley Act. The Welfare Fund was located at 1275 W. Roosevelt Road in West Chicago, Illinois from 1993 through June 2008. The Welfare Fund is now administered from an office located at 1171 Commerce Drive, Unit 1, West Chicago, Illinois 60185-2680. This is the sole office of the Welfare Fund.

3. The Administrator of the Welfare Fund is the Board of Trustees, which consists of seven natural persons. All seven Trustees of the Welfare Fund reside and are domiciled in the State of Illinois.

4. In the ordinary course of its business, the Welfare Fund maintains records regarding, among other things, participant work histories, employer contribution histories and

EXHIBIT 1

records of claims made and claims paid on behalf of participants. In my capacity as Fund Manager, I oversee the maintenance of all such records.

5.  Individuals participate in the Welfare Fund based on their inclusion in a collective bargaining unit of any of three Local Unions, those being Local No. 179, Local No. 673 and Local No. 330, all of which are affiliated with the International Brotherhood of Teamsters.

6.  The offices of Local No. 179 are in Joliet, Illinois; the offices of Local No. 673 are in West Chicago, Illinois; and the offices of Local No. 330 are in Elgin, Illinois.

7.  For a period of time ending in 1999, members of the Textile Processors, Service Trades, Health Care Professional and Technical Employees International Union Local No. 142 also participated in the Welfare Fund. That union, which is not affiliated with the International Brotherhood of Teamsters, had its office in Chicago, Illinois.

8.  The collective bargaining agreements of employers who participate in the Welfare Fund specify the monetary amount that the employers must pay to the Welfare Fund, on a monthly basis, based on the number of weeks or hours worked by employees.

9.  The records of the Welfare Fund indicate that Mr. Null was an employee of Valley Linen/Aurora Laundry in 1997 and was a member of Textile Processors, Service Trades, Health Care Professional and Technical Employees International Union Local No. 142. He was 38 years old at that time.

10.  The records of the Welfare Fund indicate that Dr. Hansel M. DeBartolo (hereinafter, "Plaintiff") provided Mr. Null certain medical services in 1997.

11.  Mr. Null's claims for treatment by Plaintiff were processed in accordance with the Fund's Plan of Benefits then in effect, which Plan was dated January 1, 1996.

12. In 1997, the Welfare Fund utilized a third party administrator to process claims. That company was W.J. Haynes & Co., located at 7045 N. Western Avenue, Chicago, Illinois 60645.

13. Mr. Null received medical services from Plaintiff on: March 7, 1997, and was charged $1,638.00 (see Exhibit A); March 10, 1997, and was charged $558.00 (see Exhibit B); March 18, 1997, and was charged $6,000.00 (see Exhibit C); March 21, 1997, and was charged $558.00 (see Exhibit D); March 24, 1997, and was charged $558.00 (see Exhibit E); April 4, 1997, and was charged $558.00 (see Exhibit F); April 15, 1997, and was charged $9,000.00 (see Exhibit G); and April 21, 1997, and was charged $558.00 (see Exhibit H). The total charged by Plaintiff to the Welfare Fund was $19,428.00. However, Plaintiff alleges in its Complaint that the charges were $19,533.00.

14. The Welfare Fund paid Plaintiff: $1,310.40 for the services rendered to Mr. Null on March 7, 1997 (see Exhibit I); $446.40 for the services rendered to Mr. Null on March 10, 1997 (see Exhibit J); $6,000.00 for the services rendered to Mr. Null on March 18, 1997 (see Exhibit K); $446.40 for the services rendered to Mr. Null on March 21, 1997 (see Exhibit L); $446.40 for the services rendered to Mr. Null on March 24, 1997 (see Exhibit M); $446.40 for the services rendered to Mr. Null on April 4, 1997 (see Exhibit N); $1,486.61 for the services rendered to Mr. Null on April 15, 1997 (see Exhibit O); and $446.40 for the services rendered to Mr. Null on April 21, 1997 (see Exhibit P). The total paid by the Welfare Fund to Plaintiff was $11,029.01.

15. The difference in the claims paid compared to the amount charged by Plaintiff for the services rendered to Mr. Null from March through April 1997 is $8,398.99 ($19,428.00 -

$11,029.01 = $8,398.99).

16. Plaintiff charged Mr. Null $9,000 for medical services provided on April 15, 1997. That claim was submitted to the Welfare Fund. On May 28, 1997, the Fund sent a letter to Plaintiff advising him that it considered the charge "considerably" above the "usual and customary" amount. (See Exhibit Q.) The Fund requested additional information from Plaintiff in order to evaluate the claim, before it made its decision regarding payment. The Fund reviewed additional information provided by Plaintiff and then issued its payment in the amount of $1,486.61 on July 10, 1997. (See Exhibit O.)

17. On March 25, 1998, Plaintiff sent a letter to the Welfare Fund protesting the amount allowed for the claim incurred on April 15, 1997. (See Exhibit R.) Plaintiff asserted that, "More should have been allowed."

18. Plaintiff did not request a review of any claim other than the April 15, 1997, claim.

19. The Plan of Benefits in effect at the time that claims were paid by the Welfare Fund to Dr. DeBartolo (between March and July 1997) was dated January 1, 1996.

20. The Plan of Benefits (as described in the Summary Plan Description ("SPD")) contains a "Claim Review Procedure," which mandates that, in order to obtain a review of a claim after a denial of benefits, the person must request a review in writing within 60 days of the date the denial was mailed. (See Exhibit S, p. 6-7 (105-106).) The Claim and Appeal Procedure also provides that a person may not file a legal action against the Plan to recover benefits until all of the proper claim review procedures have been followed. (See Exhibit S, p. 7 (106).)

21. The Plan of Benefits also provides that decisions of the Trustees in administering

the Trust shall be binding unless found to be arbitrary and capricious. (See Exhibit S, p. 5 (100).)

22. After December 1999, W.J. Haynes & Co., no longer provided claim processing services or any other services to the Welfare Fund. Thereafter, the Welfare Fund used another third party administrator, OBA Midwest, to process the claims, until May 2007.

23. I have reviewed all the records associated with this matter and have not found any notice from Mr. Null or the Plaintiff to the Welfare Fund purporting to appeal any of the claim denials within the time limits established by the Plan of Benefits.

24. I have reviewed all the records associated with this matter and have not found any correspondence from the Welfare Fund to Mr. Null or to the Plaintiff, addressing any purported appeal of any of the claim denials within the time limits established by the Plan of Benefits.

25. Mr. Null ceased to be a Welfare Fund participant on or about September 1999.

26. I have reviewed all the records associated with this matter and have not found any documents directed from Mr. Null or the Plaintiff to the Welfare Fund, purporting to request copies of the Plan or the SPD, during the period of time that Mr. Null was a participant in the Plan.

27. The Restated Agreement and Declaration of Trust creating the Welfare Fund that was in effect at the time that claims were paid by the Welfare Fund to Plaintiff (between March and July 1997) was effective as of October 12, 1977, and continues in effect today. (See Exhibit T.)

28. The Welfare Fund's Restated Agreement and Declaration of Trust provides, in Section 5.02, that decisions of the Trustees in administering the Trust shall be binding unless

found to be arbitrary and capricious. (See Exhibit T, p. 3 (V-1).)

29. For medical services rendered on March 7, 1997, March 10, 1997, March 18, 1997, March 21, 1997, and March 24, 1997, the Welfare Fund's payment to Plaintiff was made on April 22, 1997; for medical services rendered on April 4, 1997, the Welfare Fund's payment was made on May 6, 1997; for medical services rendered on April 15, 1997, the Welfare Fund's payment was made on July 10, 1997; and for medical services rendered on April 21, 1997, the Welfare Fund's payment was made on May 22, 1997. (See Exhibits I – P.)

I swear that the above statements are true and correct to the best of my knowledge.

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure [735 ILCS 5/1-109], the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to matters the undersigned certifies as aforesaid that he verily believes the same to be true.

Date: 8/19/08

Jose Colin

Date: 8/19/08

Deborah K. Simmons

OFFICIAL SEAL
DEBORAH K. SIMMONS
Notary Public, State of Illinois
My commission Expires 05-30-12