UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DR. HANSEL M. DeBARTOLO | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 07 C 7179 |
| | ) | |
| v. | ) | JUDGE ZAGEL |
| | ) | |
| SUBURBAN TEAMSTERS OF NORTHERN | ) | MAGISTRATE JUDGE KEYS |
| ILLINOIS WELFARE FUND, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OF LAW OF DEFENDANT
SUBURBAN TEAMSTERS OF NORTHERN ILLINOIS WELFARE FUND
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

This action was brought by Plaintiff against Defendant, Suburban Teamsters of Northern

Illinois Welfare Fund (hereinafter "Defendant" or "Welfare Fund"), seeking payment from the

Welfare Fund in the amount of $8,503.99, as an assignee pursuant to an alleged assignment, and

also for monetary relief due to the Welfare Fund's alleged failure to provide Plaintiff with certain

information.  This action arises under the Employee Retirement Income Security Act, as

amended ("ERISA"), 29 U.S.C. §1132(a)(1)(B).

**I.  Facts.**

The Welfare Fund is a multi-employer employee benefit trust fund maintained under the

Taft-Hartley Act.  (Defendant's Rule 56.1 Statement, paragraph (hereinafter "DS p") 1.)  The

Welfare Fund is administered from an office located at 1171 Commerce Drive, Unit 1, West

Chicago, Illinois 60185-2680.  (DS p. 3.)  The Welfare Fund was previously located at 1275 W.

Roosevelt Road in West Chicago, Illinois, from 1993 until June 2008.  (DS p. 2.)  In the ordinary

course of its business, the Welfare Fund maintains records regarding, among other things,

participant work histories, employer contribution histories and records of claims made and claims paid on behalf of participants.  (DS p. 6.)

The records of the Welfare Fund indicate that Mr. Jimmy Null was an employee of Valley Linen in 1997.  (DS p. 9.)  He was 38 years old at that time.  (DS p. 34.)  The records of the Welfare Fund indicate that Mr. Null was provided certain medical services by Dr. Hansel M. DeBartolo in 1997.  (DS p. 10.)  Mr. Null was a covered participant in the Plan until September 1999.  (DS p. 30.)

Plaintiff provided medical services to Mr. Null during the time period of March 7, 1997, through April 21, 1997.  (DS p. 13.)  Specifically, Mr. Null received medical services from Plaintiff on: March 7, 1997, and was charged $1,638.00 (see Exhibit A); March 10, 1997, and was charged $558.00 (see Exhibit B); March 18, 1997, and was charged $6,000.00 (see Exhibit C); March 21, 1997, and was charged $558.00 (see Exhibit D); March 24, 1997, and was charged $558.00 (see Exhibit E); April 4, 1997, and was charged $558.00 (see Exhibit F); April 15, 1997, and was charged $9,000.00 (see Exhibit G); and April 21, 1997, and was charged $558.00 (see Exhibit H).  (DS p. 13.)  The total charged by Plaintiff to the Welfare Fund for the foregoing services was $19,428.00.  (DS p. 14.)

The Welfare Fund paid for various medical services provided to Mr. Null by Plaintiff during the time period from March 7, 1997, through April 21, 1997.  (DS p. 15.)  Specifically, the Welfare Fund paid to Plaintiff the following amounts for medical services rendered to Mr. Null on the following dates: $1,310.40 for March 7, 1997 (see Exhibit I); $446.40 for March 10, 1997 (see Exhibit J); $6,000.00 for March 18, 1997 (see Exhibit K); $446.40 for March 21, 1997 (see Exhibit L); $446.40 for March 24, 1997 (see Exhibit M); $446.40 for April 4, 1997 (see

Exhibit N); $1,486.61 for April 15, 1997 (see Exhibit O); and $446.40 for April 21, 1997 (see

Exhibit P)  (DS p. 15.)  The total paid by the Welfare Fund to Plaintiff for the foregoing services

was $11,029.01.  (DS p. 16.)  Mr. Null's claims for treatment by Dr. DeBartolo were processed

in accordance with the Fund's Plan of Benefits then in effect as of January 1, 1996.  (DS p. 11.)

For medical services rendered on March 7, 1997, March 10, 1997, March 18, 1997,

March 21, 1997, and March 24, 1997, the Welfare Fund's payment to Plaintiff was made on

April 22, 1997; for medical services rendered on April 4, 1997, the Welfare Fund's payment was

made on May 6, 1997; for medical services rendered on April 15, 1997, the Welfare Fund's

payment was made on July 10, 1997; and for medical services rendered on April 21, 1997, the

Welfare Fund's payment was made on May 22, 1997.  (DS p. 35.)

Plaintiff charged Mr. Null $9,000 for medical services provided on April 15, 1997.  (DS

p. 13.)  That claim was submitted to the Welfare Fund.  On May 28, 1997, the Welfare Fund

advised Plaintiff that it considered the charge "considerably" above the "usual and customary"

amount.  (DS p. 18.)  The Welfare Fund requested additional information from Plaintiff in order

to evaluate the claim, before it made its decision regarding payment.  (DS p. 18.)  The Fund

reviewed additional information provided by Plaintiff and then issued its payment in the amount

of $1,486.61 on July 10, 1997.  (DS p. 19.)

On March 25, 1998, Plaintiff sent a letter to the Welfare Fund formally protesting the

amount allowed for that claim.  (DS p. 20.)  Plaintiff asserted that "More should have been

allowed."  (DS p. 20.)  Plaintiff did not request a review of the claims made for any treatment

other than the April 15, 1997, claim, which had been paid on July 10, 1997.  (DS p. 21.)  The

Plan of Benefits, as detailed in the Summary Plan Description ("SPD"), contains a "Claim

3

Review Procedure," which mandates that, in order to obtain a review of a claim after a denial of benefits, the person must request a review in writing within 60 days of the date the denial was mailed.  (DS p. 23.)  Moreover, the Plan of Benefits provides that a person may not file a legal action against the Plan to recover benefits until internal remedies (i.e., the claim review procedure) have been exhausted.  (DS p. 24.)  The Plan of Benefits in effect at the time that claims were paid by the Welfare Fund to Dr. DeBartolo (between March and July 1997) was described in the January 1, 1996, SPD.  (DS p. 22.)

Plaintiff alleges that Mr. Null assigned, in writing, his rights and benefits under the Plan of Benefits to Plaintiff.  (Docket Document (hereinafter, "DD") 22, Exhibit A, p. 6.)  The assignment reads: "I assign my medical benefits and rights from Teamsters Local No. 142 to Dr. H.M. DeBartolo Jr., for services rendered."  (DD 22, Exh. A, p. 6.)  Plaintiff claims that, on or about December 29, 2005, he requested in writing that the Welfare Fund furnish Plaintiff with information regarding the Plan pursuant to 29 U.S.C. Section 1132(c). (DD 22.)  Plaintiff's letter of December 29, 2005, is attached to Plaintiff's Complaint.  (DD 22, Exh. B, p. 8.)  The letter of December 29, 2005, was mailed to "Claims Office, 7045 N. Western Ave., Chicago, IL 60645-3488."  (DD 22, Exh. B, p. 8.)  The "Certified Mail Receipt," also attached to Plaintiff's Complaint and purporting to show that the December 29, 2005, letter was sent by Certified Mail, shows the name of the Welfare Fund and a mailing address of "1275 W. Roosevelt Rd. Unit 121, West Chicago, IL 60185." (DD 22, Exh. B, p. 9-10.)  The Certified Mail Receipt that purportedly applies to the December 29, 2005, letter, in addition to showing an address different from the December 29, 2005, letter, also bears a Postal Service form date of August 2006. (DD 22, Exh. B, p. 9-10.)

4

The Welfare Fund has no record of any notice from Mr. Null or the Plaintiff directed to the Welfare Fund, purporting to appeal any of the claim denials at issue, other than Plaintiff's March 25, 1998, letter. (DS p. 28.) In addition, the Welfare Fund has no record of any notice from Mr. Null or the Plaintiff, directed to the Welfare Fund, purporting to request copies of the Plan or the SPD, during the period of time that Mr. Null was a participant in the Plan. (DS p. 31.)

The Restated Agreement and Declaration of Trust creating the Welfare Fund that was in effect at the time that claims were paid by the Welfare Fund to Dr. DeBartolo (between March and July 1997) was effective as of October 12, 1977, and continues in effect today. (DS p. 32.) The Welfare Fund's Restated Agreement and Declaration of Trust provides, in Section 5.02, that decisions of the Trustees in administering the Trust shall be binding unless found to be arbitrary and capricious. (DS p. 33.) The Plan of Benefits contains similar language. (DS p. 25.)

## II. Argument

Plaintiff's right to payment for medical services rendered to Mr. Null in Count I of the Complaint, as well as Plaintiff's putative right to the information and payment sought in Count II of the Complaint, are premised on Plaintiff's claim that he is an assignee of a plan participant. The Court need not reach that factual issue, however, because this action must be dismissed as it is time-barred and because Plaintiff has failed to exhaust his administrative remedies.

A. Standard of review.

In an action to recover benefits under an ERISA plan, the courts employ a de novo standard of review unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *Firestone Tire*

& *Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L. Ed. 2d 80 (1989). If the plan

vests the administrator with such discretionary authority, a district court may review the

administrator's decision only for an abuse of discretion. *Id*. In such a case, the court cannot

substitute its judgment for that of the administrator. *Daill v. Sheet Metal Workers' Local 73

Pension Fund*, 100F.3d 62, 67-68 (7th Cir. 1996). The court can only set aside the

administrator's discretionary determination when it is arbitrary and capricious. *Firestone, supra*,

at 111.

     In the case at bar, both the Welfare Fund's Trust Agreement and Plan include language

that the Supreme Court in *Firestone* found confers discretion on the administrator in making

benefits determinations. Both the Trust Agreement and the Plan state that a decision of the

Trustees shall be binding upon all persons dealing with the Trust or claiming any benefit

thereunder, unless it is determined to be arbitrary or capricious by a court having jurisdiction

over such matters. The plain language of the Fund's Trust Agreement and Plan are clearly

sufficient to trigger the deferential arbitrary and capricious standard of review, also referred to as

the abuse of discretion standard.

B.  Plaintiff has filed this Complaint outside the statute of limitations period.

     The claims paid by the Welfare Fund to Plaintiff were paid more than 10 years before

Plaintiff filed this action. Plaintiff filed this action on December 21, 2007. Since a 10-year

statute of limitations period applies to actions brought under Section 1132 of ERISA, this action

must be dismissed as it was filed outside the 10-year limitations period.

     ERISA does not impose a statue of limitations for the filing of civil actions for the

wrongful denial of benefits. Courts consider a plan of benefits as a written document and

therefore a claim for benefits is considered as a matter of contract law. *Daill, supra,* at 65;

*Jenkins v. Local 705 IBT Pension Plan*, 713 F.2d 247, 252-253 (7th Cir. 1983).  Since ERISA

does not contain a statue of limitations, the most analogous Illinois statute of limitations is

borrowed as the statute of limitations in actions under Section 1132.  *Daill, supra,* at 65*;*

*Jenkins, supra,* at 253-254.  The most analogous Illinois statute of limitations is the one for

written contracts, which is a ten-year period.  *Daill, supra,* at 65; *Jenkins, supra,* at 253-254.

Moreover, it is well established that a cause of action under 29 U.S.C. 1132 arises when a claim

for benefits is denied.  *Daill, supra,* at 65*; Jenkins, supra,* at 254; see also *Reiherzer v.*

*Shannon,* 581 F.2d 1266, 1272 (7th Cir. 1978).

Plaintiff demands payment for medical services he rendered to Plan participant Jimmy

Null during the period from March 7, 1997, through April 21, 1997.  Specifically, Mr. Null

received medical services from Plaintiff on: March 7, 1997, and was charged $1,638.00;

March 10, 1997, and was charged $558.00; March 18, 1997, and was charged $6,000.00;

March 21, 1997, and was charged $558.00; March 24, 1997, and was charged $558.00; April 4,

1997, and was charged $558.00; April 15, 1997, and was charged $9,000.00; and April 21, 1997,

and was charged $558.00.

The Welfare Fund paid Plaintiff the following amounts for medical services rendered to

Mr. Null on the following dates: $1,310.40 for March 7, 1997; $446.40 for March 10, 1997;

$6,000.00 for March 18, 1997; $446.40 for March 21, 1997; $446.40 for March 24, 1997;

$446.40 for April 4, 1997; $1,486.61 for April 15, 1997; and $446.40 for April 21, 1997.  The

Welfare Fund paid to Plaintiff the full amount of $6,000 Plaintiff charged for medical services

rendered on March 18, 1997.  The remaining payments made by the Welfare Fund were paid at

the "usual and customary" rates, which were lower than the amounts Plaintiff charged Mr. Null for the medical services rendered. Such payments are considered a partial denial of benefits as the full amount sought by Plaintiff was not paid by the Welfare Fund.

For the medical services rendered on March 7, 1997, March 10, 1997, March 18, 1997, March 21, 1997, and March 24, 1997, the Welfare Fund's payment to Plaintiff was made on April 22, 1997; for medical services rendered on April 4, 1997, the Welfare Fund's payment was made on May 6, 1997; for medical services rendered on April 15, 1997, the Welfare Fund's payment was made on July 10, 1997; and, for medical services rendered on April 21, 1997, the Welfare Fund's payment was made on May 22, 1997.

The difference between the amount charged by Plaintiff (Plaintiff's claims total $19,533.00) and the total claims paid by the Welfare Fund for the services rendered to Mr. Null is $8,398.99 ($19,428.00 - $11,029.01 = $8,398.99). However, Plaintiff claims $8,503.99 in this action.

Plaintiff charged Mr. Null $9,000 for medical services provided on April 15, 1997, and, on May 28, 1997, the Welfare Fund advised Plaintiff that it considered the charge "considerably" above the "usual and customary" amount. The Fund requested additional information from Plaintiff in order to evaluate the claim, before it made its decision regarding payment. The Fund reviewed additional information provided by Plaintiff and then sent its payment to Plaintiff in the amount of $1,486.61 on July 10, 1997. This partial payment is considered to be a denial of benefits to Plaintiff, as he did not receive the full $9,000 he charged for the medical services. Under *Daill, supra*, at 65, the denial of a benefit occurs on the date the claim is processed by the benefit fund, and it is that date that is used to determine whether an action has been filed within

8

the limitations period. All of Plaintiff's claims, including the $9,000 April 15, 1997, claim, were therefore processed by the Welfare Fund by no later than July 10, 1997. Accordingly, this action is barred by the 10-year limitations period, which expired on July 10, 2007. Plaintiff's action, filed on December 21, 2007, is outside the limitations period. Therefore, the Welfare Fund requests that Count I of this action be dismissed with prejudice as it was untimely filed.

C.  Exhaustion is required before Plaintiff can sue the Welfare Fund.

Plaintiff did not exhaust the Welfare Fund's internal administrative procedures before filing its action. Therefore, Plaintiff's complaint must be dismissed.

Although Section 502, 29 U.S.C. Section 1132, provides that a civil action may be brought to redress violations of ERISA, it is silent as to whether exhaustion of administrative remedies is a prerequisite to bringing such a civil action. The Seventh Circuit Court of Appeals has noted that there exists a strong federal policy, expressed in case law, encouraging the private resolution of ERISA-related disputes, which mandates the application of the exhaustion doctrine. *Doe v. Blue Cross & Blue Shield*, 112 F.3d 869, 873 (7th Cir. 1997)*; Kross v. Western Electric Co., Inc.*, 701 F.2d 1238, 1244 (7th Cir. 1983). Therefore, as a prerequisite to filing suit, an ERISA plaintiff must exhaust his internal administrative remedies. *Zhou v. Guardian Life Ins. Co., of Am.*, 295 F.3d 677, 679 (7th Cir. 2002).

The Court of Appeals has noted that Congress intended fund trustees to have primary responsibility for claim processing, since ERISA Section 503, 29 U.S.C. Section 1133, specifically requires a claim and appeal procedure for every employee benefit plan. *Kross,* at 1244. To make every claim dispute into a federal case would undermine the claim procedures contemplated by ERISA. Congress's intent in mandating internal claims procedures found in

9

ERISA Section 503 was to minimize the number of frivolous lawsuits under ERISA, to provide a non-adversarial method of claim settlements and to minimize the cost of claims settlement for all concerned. *Id.*, at 1244-1245; *Powell v. A.T. & T. Communications, Inc.*, 938 F.2d 823, 826 (7th Cir. 1991). The Court of Appeals has concluded that plan fiduciaries and not federal courts are to have primary responsibility for claims processing. *Id.* Therefore, the Court has reaffirmed the notion that a district court may properly require exhaustion of administrative proceedings prior to the filing of a claim involving an alleged violation of an ERISA statutory provision, or the denial of a benefit claim. *Id.*

In the present case, Plaintiff did not exhaust his internal administrative remedies prior to filing this action. Moreover, Plaintiff fails to plead that he has in fact utilized the internal appeal procedures of the Welfare Fund to contest the denial of benefits. Between March 7, 1997, and April 21, 1997, Plaintiff submitted eight claims to the Welfare Fund for payment. Plaintiff claimed a total of $19,533.00; however, he was paid only $11,029.01 by the Welfare Fund. The last payments made by the Welfare Fund to Plaintiff were on May 22, 1997, and July 10, 1997. Seven of the payments made by the Welfare Fund to Plaintiff were partial denials, since the Welfare Fund did not pay the entire amount charged by Plaintiff, but rather paid only the usual and customary amounts. Plaintiff therefore claims that he has been denied benefits in the amount of $8,503.99 by the Welfare Fund.[1]

Of the eight claims at issue, Plaintiff questioned only one claim, the one dated April 15, 1997, which was for $9,000. It was not until March 25, 1998, over eight months after he

---

[1] Plaintiff cannot have a claim against the Welfare Fund for the payment it made to Plaintiff in the amount of $6,000 for medical services rendered on March 18, 1997. That payment was made by the Welfare Fund on April 22, 1997, and it constituted payment in full of the claim submitted.

10

received payment, that Plaintiff sent a letter to the Welfare Fund protesting the amount allowed

for that claim.  Plaintiff asserted that, "More should have been allowed."  However, Plaintiff's

letter contained no new medical information to support his claim.  This untimely letter did not

satisfy the Welfare Fund's "Claim Review Procedure," which mandates that a written request for

review must be made within 60 days of the date the denial was mailed.  Plaintiff's letter of

protest was not submitted with the 60-day appeal period.  Moreover, the Plan's  "Claim Review

Procedure" also provides that a person may not file a legal action against the Plan to recover

benefits until all of the proper claim review procedures have been followed.

Plaintiff has failed to utilize the internal administrative appeal procedure available to him

to contest the denial of benefits.  Therefore, Count I Plaintiff's action should be barred for failing

to exhaust his internal administrative remedies.

D.  Plaintiff's request for information and for money damages must be denied.

In Count II of his Complaint, Plaintiff claims that the Welfare Fund violated Section

502(c) of ERISA, 29 U.S.C. 1131(c), and he seeks a monetary penalty for the Welfare Fund's

alleged failure to provide Plaintiff with certain information he requested on December 29, 2005.

However, the alleged request for information of December 29, 2005, was not addressed to the

Welfare Fund.  Rather, it was mailed to the address of the Welfare Fund's former third party

administrator, W.J. Haynes & Co., at its offices located at 7045 N. Western Avenue in Chicago.

W.J. Haynes & Co. had not worked for the Welfare Fund since December 1999.

Under 29 U.S.C. 1024(b)(4), only the plan administrator is charged with furnishing a

copy of the summary plan description, annual report, trust agreement or plan of benefits, upon

written request of any participant or beneficiary.  Any administrator "who fails or refuses to

comply with a request for any information which such administrator is required by this title to furnish to a participant or beneficiary . . . by mailing the material requested . . . within 30 days after such request" may in the court's discretion be liable to such participant or beneficiary for a daily penalty amount.  29 U.S.C. 1132(c)(1)(B).

Although the Welfare Fund disputes that Plaintiff is a valid assignee, for purposes of this motion only, the Welfare Fund will assume that Plaintiff has a valid designation.  However, Plaintiff is still not a "beneficiary" because he had no colorable claim to benefits at the time that this action was filed.  In December 2007, when Plaintiff filed his Complaint, he had no colorable claim for benefits because (as shown above), he had not exhausted internal Plan remedies and his action was barred by the limitations period.  The Seventh Circuit has held that a plaintiff must have a colorable claim for benefits not only when he requests plan information, but also on the date when the plaintiff files suit.  *Neuma, Inc., v. AMP, Inc.*, 259 F3d 864, 878 (7th Cir. 2001).  Moreover, the district court has discretion whether to award penalties under Section 502(c).  *Id.*, at 879.  In *Neuma, Inc., v. Wells Fargo & Co.*, 515 F. Supp.2d 825, 859 (N.D. Ill. 2006), Judge Pallmeyer found that the plaintiff in that action had no colorable claim to benefits at the time it filed suit and plaintiff was thus not a "beneficiary" as ERISA defines the term, and so lacked standing to proceed under Section 1132(c).

Moreover, in a previous action filed by Dr. DeBartolo against another employee benefit plan, Plaintiff there complained that he had requested, but failed to receive, information from the plan pursuant to Section 1132(c).  *DeBartolo v. BCBS of Illinois*, 375 F. Supp.2d 710 (N.D.Ill. 2005).  Judge Bucklo found that Plaintiff was not entitled to any penal amount under Section 1132(c) because he suffered no injury as a result of the plan's failure to provide the requested

documents. Judge Bucklo noted that Plaintiff did not explain how his failure to receive plan

documents requested three years after the claims were examined by the plan and partially denied

had any effect on that denial. *Id.*, at 715. The court concluded that, even if Plaintiff had been

able to establish that Blue Cross Blue Shield was acting as the trustee's agent, it did not matter as

the court, exercising its discretion, concluded that Plaintiff had suffered no injury as a result of

the failure to receive the requested information. *Id.* In another district court case, the court found

that the failure to provide requested plan documents to a plaintiff did not cause any prejudice in

where the plaintiff's request for documents was made more than 18 months after the review

process had been completed. *Brightway Adolescent Hospital v. Strachan, Green, Miller &*

*Olender*, 2000 WL 33363258 (D.C. Utah 2000).

   In the present case, Plaintiff's putative request on December 29, 2005, came nearly eight

years after his initial claims for benefits were partially denied and the review process had ended

without a timely appeal. Plaintiff has not shown how the alleged denial of information in 2005

could have affected the Welfare Fund's review of his claims in 1997.

   Finally, the alleged request for information of December 29, 2005, was not sent to the

Welfare Fund. Rather, it was addressed to the offices of a prior third party administrator, W.J.

Haynes & Co., at its offices located at 7045 N. Western Avenue in Chicago. The Welfare Fund

was located at 1275 W. Roosevelt Road in West Chicago, Illinois, from 1993 through June 2008.

Moreover, the "Certified Mail Receipt" attached to the December 29, 2005, letter, purporting to

show mailing to the Welfare Fund at 1275 W. Roosevelt Road in West Chicago, could not have

been attached to the letter because the form shows a U.S. Postal Service printing date of August

2006. Therefore, Plaintiff cannot show that he actually served the purported request for

13

information of December 29, 2005, upon the Welfare Fund.  Even if Plaintiff could show that

W.J. Haynes & Co. received the disputed letter in December 2005, Plaintiff cannot establish that

W.J. Haynes & Co. was any sort of agent of the Welfare Fund, since it had ceased to provide

services for the Fund in 1999.  Therefore, the Court must deny Plaintiff's request for monetary

penalties.

**III.  Conclusion.**

WHEREFORE, Defendant requests that this Honorable Court grant its motion for

summary judgment and dismiss Plaintiffs' First Amended Complaint as this action is untimely

and also because Plaintiff has failed to exhaust his administrative remedies and he fails to state a

claim for relief.

Respectfully submitted,

Defendant SUBURBAN TEAMSTERS OF
NORTHERN ILLINOIS WELFARE FUND,


/s/Barry G. Collins; IL ARDC#: 3126979

/s/ Librado Arreola; IL ARDC#: 6203323


Barry G. Collins (bgc@ulaw.com)
Librado Arreola (la@ulaw.com)
Asher, Gittler, Greenfield & D'Alba, Ltd.
200 West Jackson Blvd., Suite 1900
Chicago, Illinois 60606
(312) 263-1500